### ADAM A. McWILLIE et al. *vs.* JOHN KIRKPATRICK.

A bankrupt is under a moral obligation to pay his debts, although the legal remedy of the creditor be barred by his certificate. Consequently the law will give effect not only to a new contract, founded on a debt contracted before the bankruptcy, but also to an express and distinct promise to pay such debt, made by the bankrupt without any new consideration, either after his certificate has been obtained, or after the issuing of the commission, and before his certificate has been granted, although the debt was provable under the commission of bankruptcy.

IN error from the circuit court of Madison county; Hon. R. C. Perry, judge.

This was a complaint in the usual form, filed by Kirkpatrick, on note under seal, and executed by McWillie et al. The first answer states that the note was founded on the following consideration, namely: that the principal in the note sued on was indebted to the plaintiff in a large sum of money, previous to the 20th February, A. D. 1843, and that on that day the defendant was duly discharged, as a bankrupt, by the district court of the United States, under and by virtue of the act of Congress then in force, and "after said discharge, and in consideration of said indebtedness, from which defendant was dis-

McWillie et al. *v.* Kirkpatrick.

charged, and for no other consideration," the notes in suit were executed.

Plaintiff demurred to this answer in short by consent, assigning two grounds : 1st, Said plea does not allege any good and sufficient answer to said complaint; 2d. Because the precedent moral obligation is a sufficient consideration for the new promise. To which there was a joinder in demurrer in short by consent. Demurrer to this answer sustained. Judgment of *respondeat ouster*, and defendant failing to answer further, judgment final. Second answer withdrawn.

The error assigned is the action of the court in sustaining the demurrer to the first answer.

*Tupper*, for appellants.

The plea in this case alleges that the only consideration of the note sued on, was a debt of the defendant, A. A. McWillie, from which he had been discharged by a decree in bankruptcy, under the bankrupt act, approved August, 1841. To this plea there is a general demurrer. Hence arises the only question in the case, Will a subsequent promise of a bankrupt render him liable to the payment of any debt, from which, by his bankruptcy, he has been discharged ?

By the terms of the bankrupt law (4th section), the decree in favor of the bankrupt must be " deemed a full and complete discharge of all debts, contracts, and other engagements of such bankrupt," or, in other words, that all his debts are fully and completely annihilated by the decree. Such being the fact, it necessarily follows that any subsequent promise of a bankrupt to pay any such debt, would be a mere *nudum pactum*, — would be void for want of consideration.

The decisions of most of the States upon this law, have tended to this conclusion. In Kentucky, it is held that a parol promise to pay, by a bankrupt, a debt due by note before his bankruptcy, will not authorize an action upon the note. *Graham* v. *Hunt*, 8 B. Mon. R. 7. This decision is evidently made upon the ground that the subsequent promise is void for want of consideration.

But the question must be regarded as having been already

adjudicated by this court. In *Prewett* v. *Caruthers*, 12 S. & M. 495, the court say, "the English authorities hold that the promise to pay will not make the bankrupt liable, unless it be distinct and unequivocal," and add, "we are inclined to exact more than the English decisions have done." How can they exact more, unless they hold that no subsequent promise will bind at all? The question, however, is not directly decided in that case, for the court say, "We do not say whether any promise will be sufficient." But the question was afterwards directly met, by the present chief justice, in *Rice* v. *Maxwell*, 13 S. & M. 289, where, in delivering the opinion of the court, he says : "Besides, the debt due to the defendant in error by Solomon C. Rice, was annihilated by the decree in bankruptcy and his final discharge. A promise to pay this debt after his discharge, was void for want of consideration."

The sufficiency of the plea was not raised in the court below, and therefore will not be noticed here. *Coulter* v. *Robertson*, 14 S. & M. 18 ; *Rabe* v. *Tyler*, 10 S. &. M. 440.

*A. P. Hill*, for appellee.

The doctrine once held in England was, that a mere moral obligation, even where no antecedent legal obligation had ever existed, was a sufficient consideration for a promise, for the honesty and rectitude of the thing was regarded as a sufficient consideration. All duties of imperfect obligation, as they are sometimes classed by moralists, when coupled with an express promise, were regarded as a sufficient consideration for a promise, whether the promise be oral or written, and whatever shape it might assume, whether note, bond, or bill. See *Hankes* v. *Sanders*, Cowp. R. 289; *Lee* v. *Muggeridge*, 5 Taunton, R. 36 ; *Seago* v. *Deane*, 4 Bing. R. 459.

In *Lee* v. *Muggeridge*, 5 Taunton, 36, (11 English Common Law Reports, page 10,) a mere moral obligation was held sufficient, although no antecedent legal obligation had ever existed ; the only question in the case was, whether any moral obligation was shown, and they held that whenever a mere moral obligation existed, it was sufficient to support a promise, although no legal obligation may ever have existed at any antecedent period. This case was decided as late as the year 1813.

McWillie et al. *v.* Kirkpatrick.

I grant that this is not now the settled doctrine in England, but that it is now restricted to much narrower limits, but it still occupies limits broad enough to protect the case now at bar. The established and well-settled doctrine, so far as authority can settle any thing, is this, — that wherever there *once* existed a precedent legal obligation, against the enforcement of which the debtor had some bar or defence, which the law justified him in asserting, but does not require him to assert, in such case a new promise will create or will revive the cause of action. This doctrine is sustained by the entire weight of English authorities, except the earlier ones already alluded to, which hold the more latitudinous doctrine that a mere moral obligation unconnected with any precedent legal obligation, was sufficient to support the promise. This doctrine, restricted as above stated, is approved by all the late writers on contracts, on bills of exchange, and on promissory notes. See Chitty on Contracts, (8th American edition,) p. 49; Parsons on Contracts, Vol. I. p. 360; Story on Bills, p. 210, 211; Story on Promissory Notes, p. 201, § 185; Bayley on Bills (5th edition of 1830), p. 504, ch. 12; Chitty on Bills (8th edition of 1833), ch. 3, p. 84. It will be found to be sustained and enforced in the following cases: — 2 Barn. and Ald. 811; 11 Adolph. & Ell. 438, 450; 3 Bos. & Puller, 247, and note (a) of the reporters; note (1) to *Osborne* v. *Williams*, 1 Saunders' Reports, 264; 2 Strange, R. 933; 1 Term R. 20; 4 East, R. 76; 8 Mann. & Gr. 807; 9 M. & W. 501.

A list of additional English authorities might be cited, but it is deemed entirely unnecessary. The best and very highest evidence of this being the undisputed English doctrine, is that by a statute passed in the reign of George IV. (6 Geo. IV.) it is provided that no promise by a bankrupt to pay a debt existing before his bankruptcy shall be binding and effectual on him, unless the same be in writing; this is but an addition to the statute of frauds, and no better evidence can be adduced of the state of the English law on this subject than the aforesaid statute; for why pass an act requiring such promises to be in writing, if they were void for want of consideration? This English statute, requiring such subsequent promises to be in writing, was a very proper one, and a salutary safeguard

against frauds and perjuries. If we had such an one in this State, the instrument in suit would be in compliance with it.

The following American authorities will be found to sustain the same doctrine, that is, the restricted doctrine, making the subsequent promise good, wherever there existed an antecedent legal obligation, which could not, of itself, have been enforced, because of some bar or defence of which the debtor might have availed himself, but which he could waive.   3 Pick. R. 159; 1 Verm. 420 ; 4 Munf. R. 273; 2 Penn. R. 521; 13 Johns. R. 257; 5 Johns. R. 272 ; 19 Pick. R. 143 ; 24 Wend. R. 97; 24 Maine R. 561 ; 2 Barb. R. 420; 7 Conn. R. 57; 2 Dev. & Bat. 302 ; 2 Sand. R. 311; 8 Ala. R. 399.

But it is said that this court has intimated a different opinion in the case of *Rice* v. *Maxwell,* 13 S. & M. 289.  That case was decided right, most unquestionably; but a single sentence has crept into the opinion, from which it is sometimes sought to be inferred that the question has been met, but it was not.  In that case, the note sued on was given under these circumstances : — Solomon C. Rice filed his application to be declared a bankrupt, and his application was resisted by Maxwell; and to induce Maxwell to withdraw his opposition to Solomon C. Rice's discharge as a bankrupt, Levi Rice, a brother of Solomon's, (and the plaintiff in error,) agreed to execute his note to Maxwell for the full amount of his claim against Solomon, which was agreed to, and the note of Levi Rice executed; and sometime after the execution of the note, and after Solomon's discharge, the plaintiff in error, Levi Rice, made a subsequent promise to pay this note.  Under these circumstances it is clear that the note was " conceived in sin and brought forth in iniquity — it was void for fraud — it was given to stifle inquiry, and to prevent the exposure of the frauds of the bankrupt, and thus enable him to get his discharge; and the note being void, no subsequent promise could bind him, or give it validity. These are the true points in the case: 1st. As to validity of the note; and, 2d. As to the subsequent promise ; and the court, after discussing the case and making their decision, rest on firm and solid ground.   Justice Smith adds: " Besides, the debt due the defendant in error, by Solomon C. Rice, was annihilated by

the decree in bankruptcy, and his discharge. A promise to pay this debt after his discharge was void for want of consideration. 3 Caines, R. 318." Now, it will be borne in mind that the court had, in a previous part of the opinion, discussed the validity of the note, and held it void; and they were now discussing the effect of the verbal promise made by Levi Rice, (the defendant below,) subsequent to its execution, that he would pay it, and the court, by the language quoted above, only meant to say, that the note being void, the subsequent promise by Levi to pay this fraudulent and void note was without consideration. This construction placed on the language makes it consistent with principle and correct law, for a note originally void for illegality can never become a valid security under any circumstances, even if the maker of such note should state to a third party about to trade for the note, that it was a good note, and founded on a good consideration, and upon the faith of such representations by the maker, this third party should become the *bonâ fide* holder of such note for value, still the maker would not be precluded from setting up the illegality of the original consideration; but by such representations made to one about to become the purchaser of the note, he would be precluded from setting up a want of consideration or failure of consideration, but not so as to the defence of illegality — that cannot be waived — thus showing that nothing can give virtue and efficacy to a note originally void for illegality or fraud. Such being the law, of course, a promise subsequent to its execution, that he would pay it, could not bind the defendant. Now, it must be borne in mind that the court were considering the effect of this subsequent promise, when they used the language referred to, namely, when they say: " Besides, the debt due to the defendant in error, by Solomon C. Rice, was annihilated by the decree in bankruptcy and his final discharge. A promise to pay this debt (by Levi Rice — for he was the party before the court) after his (Solomon's) discharge, was void for want of consideration. See conclusion of the opinion, page 223. The promise here spoken of is the promise made subsequent to its execution by Levi Rice, after Solomon's discharge.

That is the entire extent and meaning of the language, and it does not mean to assert that a deliberate promise made by a bankrupt after his discharge in bankruptcy, unconnected with fraud, is not binding on the party making such a promise; for such a doctrine is not sustained by any respectable authority anywhere, and the court did not intend in this summary way to decide any such question. The case cited by Justice Smith is *Rice* v. *Maxwell*, for the language employed by him in *Payne* v. *Eden*, 3 Caines' R. 318 (this is a typographical error, and should be p. 218), does not support or warrant any other construction to be placed on the language. In that case (*Payne* v. *Eden*), the defendant had applied to be discharged under the insolvent act of New York, and in consideration that Hustin, one of his creditors (and the payee of this note), would become one of his petitioning creditors, the note in suit was executed for Hustin's debt. The note was in blank as to date, with the understanding that it was to be filled as to the date after defendant's discharge, and some time thereafter defendant promised to pay the note. The case was put by the defendant's counsel and by the court on the ground of fraud, and held, on that account, to be void. The court held that the consideration was in fraud of the insolvent act, and hence could not support the note; that the note was void. They go on to speak of the effect of the subsequent promise, and say: " Contracts not founded in fraud, or on immoral considerations, may be revived by subsequent promises, though before such promise there was no legal remedy. This, however, only applies to cases where the contract is voidable, and not where it is absolutely void. In such cases, no subsequent promise can revive it. Hustin's debt was annihilated by the defendant's discharge in bankruptcy, and he was under no obligation in equity or good conscience to pay the debt, so as to raise a consideration for the subsequent promise." P. 218 (which is the page intended to be cited in the concluding part of *Rice* v. *Maxwell*, where it is cited as 318, instead of 218). Now it will be observed, that the court here was not speaking of the note, but of the subsequent parol or oral promise. And they have used some loose language about Hustin's being under no obligation in equity

or good conscience to pay the debt, so as to raise a considera-
tion for the subsequent promise, that is, the promise he made
subsequent to the execution of the note, to pay this fraudulent
or void note. The court did not mean to hold, I take it, that if,
after his discharge and without any fraudulent agreement, the
bankrupt had voluntarily executed a new security for the prior
debt, that the note would be void for want of consideration; in
fact, the court of that State have since held that such promise
was good and binding. 5 Johns. R. 272; 13 Ib. 257; 24
Wend. 97. The case from 13 Johns. 257, refers to and adopts
the note in 3 Bos. & Pul. 249, which sustains the principle for
which I contend. 13 Johns. 378–380; 14 Ib. 378; 5 Hill,
306.

The other case cited by the court in the opinion in *Rice* v.
*Maxwell, Cockshot* v. *Bennett,* 2 Term R. 321, fully sustains
the court for the purpose for which it is cited by them; but the
reasoning of the court in *Cockshot* v. *Bennett* is very far from
sustaining the language used in the concluding portion of the
opinion in *Rice* v. *Maxwell,* where Justice Smith says: " A
promise to pay the debt, after his discharge, was void for want
of consideration;" or, to speak more correctly, *Cockshot* v. *Ben-
nett* is a direct authority against the construction attempted to
be placed on Judge Smith's language; for, I contend that his
language does not warrant the construction attempted to be
given it by the plaintiff in error.

Mr. Justice FISHER delivered the opinion of the court.

The question presented for decision by the record in this case
is, whether a note executed for the payment of a debt from
which the maker had been discharged by a decree in bank-
ruptcy, can be recovered, or, in other words, whether such note
rests upon a sufficient legal consideration.

The rule is thus stated in Chitty on Contracts: — " A bank-
rupt is under a moral obligation to pay his debts, although the
legal remedy of the creditors be barred by his certificate; conse-
quently, the law will give effect, not only to a new contract
founded on a debt contracted before the bankruptcy, but also
to an express and distinct promise to pay such debt, made by

68 *

the bankrupt, without any new consideration, either after the issuing of the commission and before his certificate has been granted, or after the certificate has been obtained, although the debt was provable under the commission." Chitty on Contracts, p. 157. No adjudicated case, in which the question has been directly presented by the record, has been brought to our notice in opposition to this view of the law; on the contrary, they all appear to harmonize with it. The law having been thus long settled, and resting as it does upon both sound principle and justice, ought not at this day to be called in question. The discharge in bankruptcy at most only armed the debtor with a successful defence against the original cause of action, of which he might avail himself when sued, or waive at his option. When he executed the new note, he not only made an express promise to pay the debt, but tacitly agreed to waive his defence arising out of his discharge in bankruptcy.

Judgment affirmed.

HANDY, J., having been of counsel in the court below, took no part in the decision of this case.